IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 11, 2012

## DENZEL WALLACE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2640     Cheryl Blackburn, Judge**

**No. M2012-00962-CCA-R3-PC - Filed February 22, 2013**

The Petitioner, Denzel Wallace, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his conviction of second degree murder and resulting sentence of twenty years to be served at 100%. On appeal, the Petitioner contends that he did not enter his guilty plea knowingly and voluntarily and that he received the ineffective assistance of counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, and ROGER A. PAGE, JJ., joined.

Joshua L. Brand, Nashville, Tennessee, for the appellant, Denzel Wallace.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

In July 2009, the Davidson County Grand Jury indicted the Petitioner for first degree premeditated murder and first degree felony murder. In February 2011, the Petitioner pled guilty to second degree murder, a Class A felony, and received a twenty-year sentence to be served at 100%. At the Petitioner's guilty plea hearing, the State gave the following factual basis for the plea:

[O]n June 11th of 2009 a Mr. Jamie Hopkins, who is the victim in this case, was shot while he was in his car at the intersection of Clay Street and 12th Avenue North. He proceeded in the car a distance up the road before he crashed into another vehicle and subsequently died. A person who was just kind of walking through the neighborhood by the name of Jonas Davis told the police that night that he had seen three young men kind of in the street together. He had heard a woman say, here he comes again. At which point one of the three men, who he could not identify, kind of came back to a Chevy Impala that was later determined to be Mr. Wallace's vehicle and got a gun out and proceeded up to where this car was stopped at 12th Avenue North and Clay Street. He said something that would indicate that it was a robbery attempt and subsequently shot Mr. Hopkins. There was a lady, Ms. Katherine Griffin, who would say this person pulled over and was speaking with her when a person came from behind her and shot Mr. Hopkins. She would say that person was Mr. Wallace, who she was acquainted with. This was here in Davidson County.

Three months after his guilty plea, the Petitioner filed a petition for post-conviction relief, claiming that his guilty plea was involuntary and that he received the ineffective assistance of counsel. The post-conviction court appointed counsel, and counsel filed an amended petition. In the amended petition, the Petitioner alleged that his guilty plea was unknowing and involuntary because trial counsel failed to advise him about the likelihood of conviction if he proceeded to trial and failed to advise him about the weakness of the State's case. The Petitioner alleged that he received the ineffective assistance of counsel because trial counsel failed to file a motion to suppress Katherine Griffin's photograph identification of him and because counsel advised him to take a polygraph test, which "was then used as a coercive tool to convince [him] to plead guilty."

At the evidentiary hearing, the Petitioner testified that when he first met trial counsel, he asked that counsel get his one-million-dollar-bond reduced. Counsel told the Petitioner that the Petitioner had to wait. The Petitioner ended up waiting six months before his bond was reduced to one hundred thousand dollars, which was still too high for him to get out of jail. He said that if counsel had sought a bond reduction earlier, he could have obtained a second bond reduction that probably would have been low enough for him to get out of jail. He said that witness interviews were video-recorded and that he did not get to watch all of the interviews. He asked counsel to get the interviews for him, but counsel never did. He said that he learned some of the witnesses had made inconsistent statements and that viewing

the interviews would have affected his decision to plead guilty. Counsel visited the Petitioner in jail seven or eight times over a two-year period, and none of the visits lasted more than fifteen minutes. Sometimes, the Petitioner went to court without counsel. The Petitioner could not contact counsel about questions and concerns, and counsel did not have a defense strategy. The Petitioner said that he was on his own, that he felt like he did not have a lawyer, and that he tried to fire counsel.

The Petitioner testified that trial counsel described his case as a "tough one" and that counsel told him he was facing a life sentence. Counsel suggested that the Petitioner take a polygraph test because the Petitioner would get out of jail if he passed it. The Petitioner said counsel told him that failing the test would not be "a big deal." Although the Petitioner did not want to take the test, he took the polygraph and failed it. Counsel suggested that the Petitioner plead guilty, and the results of the test caused the Petitioner to worry about going to trial. He decided to plead guilty. The Petitioner said that at the plea hearing, he answered yes to all of the trial court's questions because trial counsel told him to "just go in there and say yes." The Petitioner said that he was confused and that counsel was not doing counsel's job, so he did as he was told.

On cross-examination, the Petitioner acknowledged telling the trial court at the plea hearing that he was satisfied with counsel's performance. He said that he was not satisfied and that he lied to the court. He said that he still did not know what the witnesses said in their recorded interviews because he still had not watched the interviews. He acknowledged that Katherine Griffin's interview was one he did not get to watch but that Griffin testified at his preliminary hearing. He also acknowledged that he turned down the State's initial plea offer and that he refused to accept an offer for a long time. The Petitioner said he finally decided to plead guilty because trial counsel was not prepared for trial. He denied that his decision to plead guilty resulted from the State's obtaining his cellular telephone records, showing that he was not where he claimed to be at the time of the victim's murder. He acknowledged that trial counsel told him the polygraph could not be used against him at trial.

Trial counsel testified for the State that he had been practicing law, primarily criminal defense, since 1999 and was appointed to represent the Petitioner. He said that he did not "recall us not watching any of the videos he's talking about." There were two primary witnesses in this case. One of them, Katherine Griffin, changed her story a few times, and counsel and the Petitioner discussed her inconsistencies. Counsel acknowledged that he did not try to suppress the photograph identification made by Griffin because she knew the Petitioner. The Petitioner claimed that his sister could provide him with an alibi, but the Petitioner's sister would not confirm an alibi. A few weeks before trial, counsel learned about cell tower records for the Petitioner's cellular telephone. He said that the records "put [the Petitioner] pretty much right there on the scene" and that the Petitioner changed the story

he had been telling counsel. Counsel said the records affected the Petitioner's decision to plead guilty.

Trial counsel testified that he and the Petitioner got along well and that he thought their relationship was "fine." However, at some point, an attorney telephoned counsel and claimed the Petitioner had talked with the attorney about possible representation. Nevertheless, the Petitioner did not ask counsel to file a motion to withdraw from the case. Counsel said that the defense "talked to everyone we could talk to," that they interviewed all of the witnesses, and that they knew what the witnesses were going to say. Counsel went to the crime scene, reviewed the victim's autopsy report, and reviewed all of the evidence. Counsel said that Griffin "had given wildly different stories" and that he did not know what she was going to say at trial. He said, though, that "[e]ither way it was going to be a mess." Counsel said he "laid out" the Petitioner's options for him and told the Petitioner that the Petitioner's "chances [at trial] weren't that great." The Petitioner decided to plead guilty, and counsel went over the plea agreement form with him. Counsel did not tell the Petitioner what to say at the plea hearing but told him to answer the trial court's questions and tell the truth.

On cross-examination, trial counsel testified that the Petitioner never claimed someone else was using his cellular telephone on the night of the murder. Counsel said his "understanding" was that the defense's investigator went over the witness interviews with the Petitioner. The Petitioner claimed that Griffin was lying because she did not like him, and impeaching her credibility would have been part of the defense's strategy. The State asked trial counsel if the Petitioner would take a polygraph. Counsel discussed taking the test with the Petitioner and told him that he would fail the test if he lied. Counsel also told him that the State could not use the test as evidence and that failing the test "probably wouldn't help plea bargaining." Counsel told the Petitioner that he would get out of jail if he passed the test. The Petitioner told counsel that he did not kill the victim and that he would pass the polygraph.

In a written order, the post-conviction court denied the petition for post-conviction relief. Regarding the voluntariness of the Petitioner's guilty plea, the post-conviction court noted that it "entered into a lengthy colloquy with [the] Petitioner" at the plea hearing and that the Petitioner indicated he understood the charges against him, the effect of the plea, and trial counsel's "coverage" of the plea. The Petitioner also indicated to the trial court that he was satisfied with counsel's performance. Based on the plea hearing transcript, the post-conviction court found that "there is no basis to conclude that the Petitioner's plea was anything other than knowing and voluntary." Regarding the Petitioner's claim that he received the ineffective assistance of counsel, the post-conviction court noted that trial counsel testified that he did not challenge Griffin's photograph identification of the Petitioner because Griffin knew the Petitioner and that trial counsel explained the ramifications of

-4-

taking the polygraph test to the Petitioner. The court specifically accredited trial counsel's testimony and concluded that the Petitioner decided to take the polygraph based on counsel's "ample advice."

## II. Analysis

On appeal, the Petitioner challenges the post-conviction court's denial of the petition. To be successful in a claim for post-conviction relief, a petitioner must prove factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.

Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The post-conviction court reviewed the guilty plea hearing transcript and concluded that the transcript showed the Petitioner pled guilty knowingly and voluntarily. We agree with the post-conviction court. Our review of the plea hearing shows that the trial court asked the Petitioner if trial counsel explained the murder charges and his range of punishment to him. The court also asked the Petitioner if he had talked with counsel about "everything" in his case, gone over all the discovery in the case, discussed possible defenses

with counsel, and talked with counsel about witnesses. The Petitioner repeatedly said yes. The Petitioner informed the court that he and counsel had read the plea agreement form together and that he initialed parts of the form. Our review of the plea colloquy shows that the Petitioner did not just answer "yes" to all of the trial court's questions. Instead, he answered "yes" and "no" at the appropriate times, including when the trial court asked him if he needed to ask the court any questions and if he was satisfied with trial counsel's performance. Moreover, the post-conviction court specifically accredited trial counsel's evidentiary hearing testimony. Counsel testified that the State obtained the Petitioner's cell tower records, which "put [the Petitioner] pretty much right there on the scene," and that the records affected the Petitioner's decision to plead guilty. We note that the Petitioner was facing a life sentence but that he chose to plead guilty to second degree murder in exchange for a twenty-year sentence. We agree with the post-conviction court that the Petitioner pled guilty knowingly and voluntarily.

Regarding the Petitioner's claim of ineffective assistance of counsel, counsel testified that he and the Petitioner got along, that he interviewed witnesses, that he went to the crime scene, that he reviewed the victim's autopsy report, and that he reviewed all of the evidence. Counsel did not try to suppress the photograph identification made by Griffin because she knew the Petitioner. Regarding the polygraph, counsel discussed taking the test with the Petitioner, explained the advantages and disadvantages of taking the test, and told the Petitioner that he would fail the test if he lied. Based on the evidence against the Petitioner and the Petitioner's failing the test, trial counsel advised him to accept the State's plea offer. The Petitioner decided to take counsel's advice and has failed to show that counsel rendered deficient performance or that he was prejudiced by any deficiency. The post-conviction court properly denied the petition for post-conviction relief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE